UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GUADALUPE LINDA GARCIA,

    Plaintiff,

v.                                          Case No. 1:11-CV-361

MATTHEW THORNE,                     HON. GORDON J. QUIST

    Defendant.

_____/

## OPINION GRANTING SUMMARY JUDGMENT

Plaintiff, Guadalupe Linda Garcia,[1] filed a complaint against Defendant, Matthew Thorne, a police officer for the Mason Police Department (MPD). The complaint stems from events that occurred after the Ingham County Prosecutor's Office issued an arrest warrant for Garcia's son, Chaz Smith, pursuant to an investigation conducted by Officer Thorne. The warrant cited Chaz for breaking and entering, second degree. Officer Thorne sought Garcia's assistance to execute Chaz's warrant, but Garcia refused to cooperate. In turn, Officer Thorne requested a warrant for Garcia for harboring a felon. Instead of issuing a warrant for harboring a felon, the Ingham County Prosecutor's Office issued a warrant for truancy. A day later, Garcia was arrested for truancy, but the charge was dismissed a little over a month later. Over two years later, Garcia filed a six-count complaint against Officer Thorne alleging: false arrest (Count I); violation of Garcia's substantive due process rights (Count II); malicious prosecution (Count III); retaliation in violation of the First Amendment (Count IV); abuse of process (Count V); and "exemplary damages" (Count VI).

---

[1] Throughout the briefs and exhibits for the instant motion, Guadalupe Linda Garcia is referred to by several different names, such as Lupe, Lupi, Guadalupe, or Guadalupe Smith. Throughout this opinion, she will be referred to as "Garcia."

Pursuant to Fed. R. Civ. P. 56, Officer Thorne has filed a motion for summary judgment. (Docket no. 20.) Garcia has filed a response and Officer Thorne has filed a reply. For the reasons set forth below, Officer Thorne's motion for summary judgment will be granted and Garcia's complaint will be dismissed.

## I. BACKGROUND

Officer Thorne has been an officer with the MPD since April 2006. Garcia resided in Mason, Michigan, until sometime in 2008. Neither Thorne nor the MPD knew the exact date when Garcia changed residences. In addition, neither Officer Thorne nor the MPD knew Garcia's new address, but they had information that the new address was on the south side of Lansing, Michigan. Despite the residence change, Chaz, Garcia's son, remained enrolled at Mason Summit High School during the spring of 2008. Mason Summit High School is a school within the Mason Public Schools System and within the MPD's jurisdiction.

On March 17, 2008, the MPD responded to a breaking and entering at a Mason home. The MPD investigated the crime and identified Chaz as one of the suspects. On March 24, 2008, Officer Thorne submitted a warrant requested to the Ingham County Prosecutor's Office. (Def.'s Br. Ex. 2, Chaz Warrant Request Disposition.) The request cited Chaz for home invasion, second degree, a felony. (*Id.*)

On March 27, 2008, Assistant Prosecuting Attorney (APA), Patricia Esch, who reviewed Officer Thorne's request, authorized the warrant for the same charge–a felony of home invasion, second degree. (*Id.*) Because Chaz was a minor at the time (15 years old), the state court's family division issued an apprehension order for Chaz. (*Id.*)

In an effort to apprehend Chaz, Officer Thorne attempted to communicate with Chaz and Garcia on several occasions.[2] According to Officer Thorne's report, Garcia was very "anti-police," hostile towards Officer Thorne, and uncooperative. (Def.'s Br. Ex. 3, Incident Report at 2.)

On April 1, 2008, Officer Thorne attempted to contact Garcia at her home telephone number. Garcia was unhappy to receive the telephone call and told Officer Thorne to "fuck off."[3] Garcia would not tell Officer Thorne her current address and told Officer Thorne that he needed to leave Chaz alone.

Officer Thorne's police report includes an April 3, 2008, email that Matt Stuard, Program Coordinator at Mason Summit High School, sent to the School Resource Officer, Officer Steve Chick, which reads:

> [Garcia], Chaz's mom, came to see me today, and wanted to know what we could do about school since Chaz was having "legal problems."
>
> When I asked why he wasn't here she said he had a warrant for his arrest and that he was going to be taken in anytime so she didn't see the point of having him start back at school.
>
> She also mentioned hiring a lawyer for Chaz and trying to contact Officer Thorn[e] once she has the lawyer.

(*Id.*) Garcia said that she does not recall this conversation with Stuard, but said that she has no reason to dispute that it occurred. (Def.'s Ex. 4, Garcia Dep. at 73.)

---

[2] According to Garcia, Officer Thorne and Garcia have had previous interactions. In 2005, Garcia dated a former Lansing Police Officer, Rob Vargas. (Pl.'s Ex. 1, Garcia Dep at 14.) One time, Vargas assaulted her, which caused Garcia to go to the emergency room. (*Id.*) The MPD, along with the Lansing Police, arrived at the emergency room to take a report. (*Id.* at 27.) After the assault, Garcia had several other incidents with Vargas, some of which required the police's attention. On one occasion, Vargas broke into Garcia's home, assaulted her, and raped her. (*Id.* at 34.) Garcia called the MPD and Officer Thorne was the officer who responded. (*Id.* at 38.) According to Garcia, Officer Thorne told her that she should leave Vargas alone. (*Id.* at 39.) Garcia felt that Officer Thorne was not taking her complaint seriously and placing the blame on her for what had happened. (*Id.*)

[3] Garcia testified that she used "choice words" on a phone call which occurred at a later date. It is unclear whether this is a separate phone call, or the same phone call but one of the parties is mistaken as to the date. Garcia's recollection would place the phone in the early morning hours of April 15, 2008.

3

On April 10, 2008, Officer Thorne spoke to Chaz over the telephone and informed him that an apprehension order had been issued for his arrest. Officer Thorne said that Chaz agreed to turn himself in on April 14, 2008. Chaz said that he was going to inform his mother, Garcia, of his intentions.

Sometime before April 14, 2008, Garcia said that Officer Thorne called her house in the early morning hours. Garcia asked Officer Thorne to call her during the day.

On April 14, 2008, when Officer Thorne arrived at work, a MPD secretary informed Officer Thorne that Garcia had contacted the MPD. (Def.'s Ex. 3, Incident Report at 2, 4.) Garcia stated that she would not be bringing her son to turn himself into the MPD. Garcia confirmed that she advised her son not to turn himself into the police. (Def.'s Ex. 4, Garcia Dep. at 86.) Chaz acknowledged the conversation between him and his mom, which he took to mean "Don't go turning yourself in." (Def.'s Ex. 1, Chaz Dep. at 21-22.) In addition, Garcia informed the MPD secretary that she wanted to file a complaint against Officer Thorne because he allegedly called her telephone at 11:00 p.m. and 1:00 a.m. Garcia never filed a formal complaint.

Later on April 14, 2008, Officer Thorne attempted to contact Garcia. He called both of Garcia's telephone numbers (land-line and cell phone), to no avail. Officer Thorne left her a message to call him back at the MPD.

A few minutes later, Officer Thorne contacted Stuard, the Program Coordinator at Mason Summit High School. Over the telephone, Stuard advised Officer Thorne that Chaz had not been at school since March 31, 2008. Additionally, Stuard said that Garcia indicated that she knew the MPD wanted to apprehend her son on serious charges.

On April 15, 2008, Officer Thorne attempted to contact Garcia and Chaz; neither answered, so Officer Thorne left messages for both of them. The MPD's phone records show that these calls

4

were made around 3:20 p.m. According to Garcia, Officer Thorne called her sometime between 3:00 and 4:00 a.m.

Later on April 15, 2008, Officer Thorne submitted a warrant request to the Ingham County Prosecutor's Office for harboring a felon. (Def.'s Ex. 7, Garcia Warrant Request.) The warrant request cited Garcia for harboring a felon. (*Id.*) According to Officer Thorne's incident report, "[g]iven the fact that [Garcia] knows her son has a warrant for his arrest and she refuses to cooperate with police by concealing him, I am seeking a warrant on Guadalupe for Harboring a felon." (Def.'s Br. Ex. 3, Incident Report at 5.) In the warrant request, Officer Thorne stated that Garcia refused to have her son turned in on the apprehension order. (Def.'s Ex. 7.) He also stated that Garcia was not sending Chaz to school because she did not want him arrested. (*Id.*) Moreover, the request said that Chaz had not been in school since April 2, 2008. (*Id.*) The warrant request listed the location of the crime as the City of Mason, and listed Garcia's address as being in Mason.

On April 16, 2008, the Ingham County Prosecutor's Office authorized a warrant for Garcia for misdemeanor truancy, in violation of M.C.L. § 380.1561. (*Id.*) In the summary of the offense, the warrant says that Garcia refused to have her son turned in, Garcia did not want her son picked up, Garcia told the Mason Summit High School that she was not going to send Chaz to school, and Chaz had not been seen in school since April 2, 2008. (*Id.*)

After the warrant issued, Officer Thorne located Garcia's address, which was in Lansing, Michigan, not Mason. Shortly thereafter, the Lansing Police Department executed the arrest

warrant, and then transferred Garcia into the custody of Officer Thorne.[4] Officer Thorne took Garcia to the County jail for processing, where she remained for less than a full day.

Chaz was arrested for his breaking and entering warrant on April 17, 2008. He received two years of probation for his involvement in the home invasion.

One month and eleven days after Garcia was arrested, the prosecutor file a *nolle prosequi* and the truancy charges against Garcia were dismissed. Garcia filed the instant lawsuit on April 10, 2011.

## II. MOTION STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2553).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

---

[4] When Officer Thorne initially took custody of Garcia, Garcia's handcuffs were on too tight and it caused her pain. However, after she complained about the handcuffs being too tight, Officer Thorne loosened the handcuffs. Garcia mentions this event, but makes nothing of it.

(1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).

.                                             **III.  ANALYSIS**

    A.    <u>False Arrest (Count I)</u>

In Count I, Garcia asserts a § 1983 claim for a violation of her Fourth Amendment rights based upon a false arrest. Very generally, Garcia asserts that Officer Thorne had "no jurisdiction over the crime he alleged in his warrant request" (compl. ¶ 30), and "no jurisdiction over the crime ultimately charged." (*Id.* ¶ 31.) In addition, Garcia alleges that Officer Thorne "had no probable cause that [Garcia] had committed any crime." (*Id.* ¶ 33.)

Count 1 will be dismissed because Officer Thorne had probable cause or, at the very least, Officer Thorne is entitled to immunity because reasonable officers could disagree whether probable cause existed. Count 1 also fails because there is no evidence that Officer Thorne made any false statements or omissions that would have eliminated probable cause if the truth of the statements had been known.[5]

    1) <u>Probable Cause</u>

---

[5] With the facts of this case, it is not entirely clear whether Officer Thorne could possibly be subject to a § 1983 claim for false arrest due to a lack of probable cause. All Sixth Circuit precedent states that an <u>arresting officer</u> can be liable for false arrest if he lacked probable cause. However, Officer Thorne was not the arresting officer. Officer Thorne merely took custody of Garcia after the arrest warrant was executed by the Lansing Police Department. Regardless, given Officer Thorne's involvement in effectuating the arrest, the Court finds it appropriate to consider whether probable cause existed.

Office Thorne contends that probable cause existed to support the charges of harboring a felon and truancy,[6] and therefore Garcia's false arrest claim should be dismissed. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). "Probable cause" means the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979). Probable cause can be based on hearsay and other evidence which may not be admissible at trial. *Gerstein v. Pugh*, 420 U.S. 103, 123-25, 95 S. Ct. 854, 868 (1975). The mere fact that a suspect is later acquitted of the offense for which he or she is arrested is irrelevant to the validity of the arrest. *DeFillippo*, 443 U.S. at 36, 99 S. Ct. at 2631. An officer is entitled to immunity if, on an objective basis, officers of reasonable competence could disagree on whether probable cause existed. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

First, Garcia was never "falsely arrested" for harboring a felon, because she was never arrested for such a charge. Second, even if Garcia would have been charged and arrested for harboring a felon, reasonable minds could disagree whether probable cause existed. When requesting an arrest warrant for Chaz's breaking and entering, Officer Thorne cited Chaz for a felony. Despite Chaz being age 15, Chaz could have been charged as an adult, and therefore still could have been charged with a felony. In fact, the APA who authorized Officer Thorne's warrant

---

[6] To clarify, Garcia was arrested for misdemeanor truancy. Officer Thorne requested a warrant for harboring a felon, but the prosecutor's office did not approve an arrest warrant for that charge. Instead, the Ingham County Prosecutor's Office issued a warrant for misdemeanor truancy. Subsequently, a Lansing Police Department officer executed the arrest warrant, and thereafter transferred Garcia into Officer Thorne's and the MPD's custody.

request for Chaz also cited Chaz for committing a felony. After the arrest warrant issued, Garcia continually avoided Officer Thorne, despite knowing her son's whereabouts, including being in the same house with him. Moreover, Officer Thorne had information that Garcia knew that her son was wanted on serious charges. In addition, Officer Thorne thought that Garcia was concealing Chaz from the police. Considering these and all other circumstances within Officer Thorne's knowledge, a reasonable person could believe that Garcia was harboring a felon. At the very least, reasonable minds could disagree whether probable cause existed and, thus, Officer Thorne is entitled to qualified immunity.

As to truancy, Officer Thorne did not make the decision to arrest Garcia for truancy; the Ingham County Prosecutor's Officer made that decision. In addition, the Lansing Police Department executed the arrest warrant; not Officer Thorne or the MPD. Even had Officer Thorne requested a warrant for the truancy charge, reasonable minds could disagree whether probable cause existed for such a charge. *See* M.C.L. § 380.1561(1) (Michigan's compulsory school attendance law, which states that a parent "shall send the child to a public school"). Officer Thorne was told by Stuard, Chaz's school program coordinator, that Garcia said that she would no longer send Chaz to school. (Def.'s Ex. 3, Incident Report at 2.) At the time of the warrant request, Chaz had not been at school for more than ten days. (*Id.* at 2, 3.) Considering these and all other circumstances, a reasonable person could believe that Garcia committed truancy. At the very least, reasonable minds could disagree whether probable cause existed and, thus, Officer Thorne is entitled to qualified immunity.

Garcia argues that, by looking at each element of Michigan's harboring a felon and truancy statute, a reasonable officer could not have believed that Garcia committed either crime. This Court disagrees. Probable cause requires only the probability of criminal activity, not a prima facie showing. *People v. Russo*, 439 Mich. 584, 607, 487 N.W.2d 698, 708 (1992) (citing *Illinois v.*

*Gates*, 462 U.S. 213, 235, 103 S. Ct. 2317, 2330 (1983)); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). The Supreme Court has repeatedly rejected technical legal approaches to consider whether probable cause existed. Considering all of the information within Officer Thorne's knowledge, it was reasonable for him to believe that Garcia had harbored a felon or committed truancy.

### 2) Full and Fair Disclosure

Count 1 is dismissed for another reason; there is no genuine issue of material fact that Officer Thorne did not make any misstatements in the warrant request, without which probable cause would not have existed. An arrest based on a facially valid warrant approved by a magistrate provides a complete defense to a claim of false arrest. *Sykes*, 625 F.3d at 305. Thus, in order to prevail on a false-arrest claim, Garcia must "prove by a preponderance of the evidence that in order to procure the warrant, [Officer Thorne] 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks omitted)).

Garcia argues that Officer Thorne listed Garcia's previous Mason address on the warrant request, even though Officer Thorne knew that she no longer lived in the City of Mason. Garcia argues that, therefore, Officer Thorne was "acting outside of his authority." Garcia also states that Officer Thorne falsely listed the offense location as Mason.

Garcia's allegation that Officer Thorne lied in his warrant request is unsupported by any evidence. Before the arrest warrant issued, Sergeant Hanson of the MPD, in the incident report for the warrant request, states: "It should be noted that the Mason Police Department currently does not have an up to date and accurate address for the Smiths." (Def.'s Ex. 3, Incident Report at 6.) In

addition, Officer Thorne fully disclosed that Guadalupe and Chaze "moved somewhere in the south end of Lansing," but their "last known address is . . . in Mason." (*Id.* at 2.) Furthermore, the incident report indicates that Officer Thorne made several unsuccessful attempts to locate Garcia's new address; thereby only having within his knowledge Garcia's last known address in Mason. Then, the incident report indicates that Officer Thorne learned of Garcia's new address on April 16, at approximately 6:00 p.m., *after* the warrant had already issued. (*Id.* at 8.) Garcia was apprehended shortly thereafter. There is no evidence that Officer Thorne made anything but a full and fair disclosure in his warrant request.

Second, Garcia does not provide evidence or legal support that Officer Thorne acted "outside of his authority." As Garcia notes, M.C.L. § 764.2a prohibits a police officer from acting outside his or her jurisdiction without acting in conjunction with police officers that have jurisdiction. However, "[t]he purpose of M.C.L. § 764.2a is not to protect the rights of criminal defendants, but rather to protect the rights and autonomy of local governments." *People v. Clark*, 181 Mich. App. 577, 581, 450 N.W.2d 75, 77 (1989); *People v. Hamilton*, 465 Mich. 526, 535, 638 N.W.2d 92, 97-98 (2002) (citing *Clark* and holding that M.C.L. § 764.2a does not require exclusion of evidence as a result of police conduct not in accordance with the statute), *overruled in part on other grounds by Bright v. Ailshie*, 465 Mich. 770, 641 N.W.2d 587 (2002). Moreover, when Garcia was arrested at her home in Lansing, the Lansing Police Department executed the arrest. Furthermore, a large number events occurred in Mason, all of which culminated in Garcia's arrest, including: Chaz's breaking and entering; the issuance of Chaz's apprehension order; and Chaz's enrollment at Mason Summit High School. In addition, before the time of Garcia's address, the MPD's last known address for Garcia was in Mason.

Regardless, whether these statements are false is irrelevant because, assuming that they are false, the statements have no bearing on the Court's previous probable cause analysis. *See Sykes*, 625 F.3d at 305. Thus, even taking Garcia's allegations as true (that Officer Thorne made false statements in the warrant application), Garcia still does not create a genuine issue of material fact that Officer Thorne effectuated a false arrest; Garcia's address and the location of the crime do not have any effect on the probable cause which existed that Garcia harbored a felon or committed truancy.

Therefore, Count 1 will be dismissed.

### B.  Substantive Due Process (Count II)

Count II alleges that Garcia's substantive due process rights were violated. Garcia asserts that her rights were violated because Officer Thorne allegedly: repeatedly called her cell phone and home telephone during unreasonable hours after being told to stop and even after Garcia complained to the MPD (compl. ¶¶ 41, 44, 45); intentionally submitted a warrant request for an alleged offense outside of his jurisdiction (compl. ¶ 42); and intentionally submitted a warrant request for an offense for which probable cause did not exist (compl. ¶ 43).

The Fourteenth Amendment's Due Process Clause has a substantive component that protects individual liberty and property interests from arbitrary government actions. *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009). Garcia must show that Officer Thorne's conduct was so arbitrary and capricious as to "shock the conscious." *Id.* (citing *Cnty. of Sacremento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 1717 (1998)).

Officer Thorne did not violate Garcia's right to substantive due process. First, this Court has already determined that probable cause existed for the warrant that Officer Thorne requested.

Second, taking the remaining allegations and evidence in the light most favorable to Garcia,[7] Officer Thorne's actions do not shock the conscience. Nothing prohibited Officer Thorne from making late night telephone calls. The telephone calls may have been inconvenient, but the calls were not arbitrary and capricious considering Officer Thorne's difficulty in locating and apprehending Chaz. In addition, Officer Thorne's investigative techniques must be considered in light of Garcia's and Chaz's unwillingness to cooperate. *See Draw v. City of Lincoln Park*, 491 F.3d 550, 556 (6th Cir. 2007) (stating that "police conduct must be truly extraordinary in nature to qualify as 'conscience shocking'" and conduct that showed "incredibly poor judgment" did not meet this standard). On top of that, as discussed above, Garcia provides no evidence or legal support that Officer Thorne improperly acted outside of his jurisdiction.

Considering all of the circumstances, and taking all of the facts in the light most favorable to Garcia, Officer Thorne's actions do not violate Garcia's right to substantive due process. Therefore, Count II will be dismissed.

C. **Malicious Prosecution (Count III)**

The Sixth Circuit has held that "a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful." *Kinkus v. Vill. of Yorkville*, 289 F. App'x 86, 91 (6th Cir. 2008); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). Here, Officer Thorne did not make the decision to charge Garcia with misdemeanor truancy; the Ingham

---

[7] Despite Officer Thorne's urging, this Court cannot rule out the possibility that Officer Thorne made late-night or early-morning calls to Garcia. To make that determination, this Court would need Garcia's home telephone records; Officer Thorne only provided Garcia's cell phone records. In addition, besides Officer Thorne's work cell phone, he had several other methods which he could have used to call Garcia's home telephone.
Therefore, taking all inferences in favor of Garcia, Officer Thorne made the telephone calls about which Garcia testified.

County Prosecutor's Office made that decision. Hence, whether Officer Thorne can be liable for malicious prosecution pursuant to the Fourth Amendment hinges on whether he submitted truthful information to the prosecutor. As discussed above, no genuine issue of material fact exists that Officer Thorne made any false statements or omissions that had a bearing on the determination of probable cause. In addition, probable cause to initiate criminal proceedings is a defense to a Fourth Amendment malicious prosecution claim. *Sykes*, 625 F.3d at 308. As discussed above, Officer Thorne had probable cause to seek an arrest warrant for Garcia.

Therefore, for both of these reasons, Count III will be dismissed.

### D.     Retaliation in violation of the First Amendment (Count IV)

In Count IV, Garcia alleges that Officer Thorne violated Garcia's First Amendment rights by retaliating against her after Garcia called the MPD and "verbally expressed her criticism of Defendant Thorne." (Compl. ¶ 64.) Garcia alleges that Officer Thorne retaliated in two ways. First, Garcia claims that Officer Thorne retaliated against her by calling her on April 15, 2008, between 1:00 am. and 3:00 a.m. (*Id.* ¶ 65.) Second, Garcia claims that Officer Thorne retaliated against her by submitting the warrant request seeking criminal charges against Garcia. (*Id.* ¶ 66.)

To establish a retaliation claim under the First Amendment, Garcia must show: (1) that she was engaged in constitutionally protected activity; (2) Officer Thorne's adverse action caused Garcia to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of her constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

As to the second element, Officer Thorne argues that his actions would not likely chill a person of ordinary firmness from continuing to engage in protected activity. "[C]ertain threats or

14

deprivations are so de minimis that they do not rise to the level of being constitutional violations."

*Hill v. Lappin*, 630 F.3d 468, 472-73 (6th Cir. 2010) (citation omitted).

> [W]hile certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (1999).

Here, a genuine issue of material fact exists whether Officer Thorne's actions were truly inconsequential. A question of fact remains whether Officer Thorne called Garcia in the early morning hours. If Officer Thorne made these telephone calls shortly after Garcia complained to the MPD about these very calls, a jury could find that such calls could chill a person of ordinary firmness from filing an official complaint. Moreover, seeking an arrest warrant is not de minimis.

However, Garcia's retaliation claim fails because she does not come forth with sufficient evidence that Officer Thorne acted in response to her complaining to the MPD. *Id.* at 399 (noting that, to establish the third element, the plaintiff first has the burden of establishing that his protected conduct was a motivating factor behind any harm.") For the third element of a retaliation claim, "the subjective motivation of the defendant[] is at issue." *Id.* The plaintiff must point to specific, nonconclusory evidence reasonably linking her speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). "Temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). In addition, as to Garcia's claim that Officer Thorne retaliated by seeking an arrest warrant, the inclusion of or lack of probable cause is highly probative, if not dispositive, that Officer Thorne did not act with a retaliatory motive. *See Hartman v. Moore*, 547 U.S. 250, 266-67, 126 S. Ct. 1695, 1707 (2006).

Garcia's only nonconclusory evidence of retaliation is temporal proximity. By itself, temporal proximity is insufficient to support a claim. Even so, several other factors indicate that Officer Thorne did not act with a retaliatory purpose. As to the phone calls, the undisputed evidence is that Officer Thorne had been calling Garcia and Chaz well *before* Garcia lodged her complaint. Officer Thorne's investigative report is replete with evidence that he made numerous calls and contacts in an effort to locate a suspect (Chaz), not because Garcia verbally complained to the MPD secretary. Garcia has not met her burden that Officer Thorne called her at inconvenient hours *because of* her verbal complaint.

As to Officer Thorne's warrant request, he had probable cause that Garcia had harbored a felon; this is highly probative, if not dispositive that Officer Thorne did not act with a retaliatory purpose. Second, the incident report contains evidence of Officer Thorne's motivation for seeking the warrant: "Given the fact that [Garcia] knows her son has a warrant for his arrest and she refuses to cooperate with police by concealing him, I am seeking a warrant on [Garcia] for Harboring a felon." (Incident Report at 3.)

In sum, Garcia has not come forth with evidence to meet her burden that Officer Thorne acted with a retaliatory motive. Thus, Count IV will be dismissed.

E. **Abuse of Process (Count V)**

In Garcia's § 1983 abuse of process claim, Garcia alleges that Officer Thorne improperly obtained an arrest warrant in order to retaliate against Garcia. (Compl. ¶ 83.) The Sixth Circuit has not "specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983." *Voyticky*, 412 F.3d at 676. In order to resolve a § 1983 abuse of process claim without deciding whether such a claim is cognizable, the Sixth Circuit typically assumes that the elements would likely mirror those of state law. *Id.* at 676-77.

In Michigan, to establish a claim for abuse of process, a plaintiff must prove: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30, 312 N.W.2d 585, 594 (1981) (citation omitted). For an abuse of process claim, the misconduct "is *not the wrongful procurement of legal process or the wrongful initiation* of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* at n.18 (quoting Rest. Torts, 2d, § 682, comment a.) (emphasis added).

Count V fails because Garcia has not come forth with evidence that Officer Thorne acted with an ulterior purpose. In her complaint, Garcia *alleges* that Officer Thorne requested a warrant for the purpose of retaliating. However, as discussed above, Garcia has not come forth with evidence that Officer Thorne acted with a retaliatory purpose.

Count V fails also because Garcia does not show that Officer Thorne committed some irregular act in the use of a legal process. The only wrongful act that Garcia alleges is the wrongful initiation of criminal proceedings by effectuating an arrest warrant. *See Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W. 343, 344 (1911) ("This action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." (quotation omitted)).[8] In *Spear*, the defendant was dismissed because, even though the defendant may have had an improper motive in causing the criminal process to issue against the plaintiff, the defendant had no further connection with the proceedings once the warrant had been issued. *Id.* at 624, 130 N.W. at 344-45. Here, Garcia does not allege that Officer Thorne had an improper motive *after* criminal

---

[8] According to at least one Michigan state court, Garcia's abuse of process claim is also without merit because Officer Thorne had probable cause to arrest her. *See Card v. City of Highland Park*, 2003 WL 21350239, at *3 (Mich. Ct. App. June 10, 2003) (finding an abuse of process claim meritless because "we find that . . . the arresting officers had probable cause to arrest plaintiff").

17

proceedings issued, or even that Officer Thorne had any involvement with the criminal proceedings besides taking Garcia to the county jail.

Therefore, Count V is dismissed.

### F. "Exemplary Damages" (Count VI)

"Exemplary damages" is not a cause of action; it is a type of remedy. A "cause of action" is the right to assert some independent legal right. In a legal action, rights and remedies are separate elements. *See Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 163 (1803) ("[W]here there is a legal right, there is also a legal remedy by suit or action at law, *whenever that right is invaded*." (emphasis added)). Count VI is dismissed because it literally does not state a cause of action.

### IV. CONCLUSION

For the reasons set forth above, Garcia's complaint will be dismissed because there is no genuine dispute as to any material facts and Officer Thorne is entitled to judgment as a matter of law. Therefore, Officer Thorne's Motion for Summary Judgment (docket no. 20) will be granted.

A separate Order will issue.

Dated: May 18, 2012 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE